IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 18-22-BU-DLC |
| Plaintiff, | ORDER |
| vs. | |
| SHAWN ROBERT ARRANTS, | |
| Defendant. | |

Before the Court are Defendant Shawn Robert Arrants's objections to his Presentence Investigation Report ("PSR") regarding the calculation of criminal history under U.S.S.G. §§ 4A1.1 and 4A1.2. (Docs. 31 at 5–7.) As reflected in the judgment issued in this case and as discussed on the record during the sentencing hearing, the Court overrules the objections.

Section 4A1.1(a) provides that a prior conviction adds three points to a defendant's criminal history score if the defendant received a "sentence of imprisonment exceeding one year and one month." On the other hand, under § 4A1.1.(b), the prior conviction scores only two points if the "sentence of imprisonment" is between sixty days and one year and one month. At issue is whether two prior convictions were properly scored in Arrants's PSR as three—and not two—points apiece when Arrants was committed to the Montana

1

Department of Corrections ("DOC") for terms of five years but when the sentencing judges recommended placement in a secure inpatient substance abuse treatment facility that contracts with the DOC.

Arrants first challenges the scoring of an April 2006 conviction for felony criminal endangerment, summarized in Paragraph 37 of the PSR. Initially, he received a five-year suspended sentence, with a time-served credit for 180 days in jail. (Docs. 31 at 5; 31-1.) Had Arrants's suspended sentence not been revoked, there is no question that this first conviction would not be a "sentence of imprisonment exceeding one year and one month," U.S.S.G. § 4A1.1(a), as the guidelines make clear that "'sentence of imprisonment' refers only to the portion [of a sentence] that was not suspended," U.S.S.G. 4A1.2(b)(2). However, in November 2006, Arrants was found to be in violation of the conditions of his suspended sentence, and he was committed to the DOC for a five-year term with no time suspended. (Doc. 31-3.) The sentencing judge recommended to the DOC that Arrants be placed in the Corrections Connections Program, an intensive substance abuse treatment program that serves offenders in an inpatient facility. (Doc. 31-3.)

The second conviction, captured in Paragraph 38, is a November 2006 conviction for one count of felony negligent vehicular assault and two counts of misdemeanor vehicular assault. At sentencing, Arrants was committed to the

2

DOC for a five-year term as to the felony and two six-month terms as to the misdemeanors—with all sentences to run concurrently, and again, with no time suspended. As with the first conviction, the judge recommended placement in the Connections Corrections Program.

In both cases, the Gallatin County Court judge imposing sentence used a standardized check-box form. The sentencing judges in the 2006 cases could have checked a different box in order to sentence Arrants to a definite term in the Montana State Prison or the Gallatin County Detention Center. (Docs. 31-2 & 31-3.) Instead, the two judges gave discretion to the DOC for the next five years, recommending—but not mandating—that Arrants spend some or all of his time in an intensive inpatient treatment center catering to individuals in the criminal justice system. Arrants contends that these convictions could score three criminal history points only if the sentencing judges had either checked the box requiring incarceration for a specific length of time or ordered that Arrants be given time-served credit for more than one year and a month of actual incarceration.

Arrants argues that, even though he was committed to the DOC for a five-year term as to each of the two convictions, he was not sentenced to a term of imprisonment exceeding one year and one month as to either conviction. His position is that his term of imprisonment as to each conviction precisely equals the time-served credit listed on each judgment form.

3

Resolving this issue depends on the definition of "sentence of imprisonment." Section 4A1.2(b) provides that the term "means a sentence of incarceration and refers to the maximum sentence imposed" and that it does not refer to any portion of a sentence that is suspended. Application Note 2 to § 4A1.2 further clarifies that "criminal history points are based on the sentence pronounced, not the length of time actually served." Thus, "the length of a sentence of imprisonment is the stated maximum"; for example, if a defendant is sentenced to an "indeterminate sentence for a term not exceed five years," the "length of the sentence of imprisonment" is five years. U.S.S.G. § 4A1.2 cmt. n.2. Further, if the original term of imprisonment did not exceed one year and one month, but the defendant was revoked, the sentence of imprisonment comprises not only the original term of imprisonment but also "any term of imprisonment imposed upon revocation." U.S.S.G. § 4A1.2(k)(1).

"[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). Here, the commentary to the Guidelines is dispositive. Arrants was given an indeterminate term of confinement, not to exceed five years, upon both convictions. He was committed to the DOC for five years as to each conviction, and he could have been required to serve all five of

4

those years in prison. Significantly, once Arrants was committed to the DOC, there was no continuing judicial oversight over his placement. The sentencing judges recommended placement in a secure rehabilitation center, but the DOC could have rejected those recommendations and placed Arrants in prison without offering Arrants cause for legal challenge to his placement.

Although Arrants did not direct the Court's attention to the Ninth Circuit case of *United States v. Latimer*—in fact, the government did—the Court notes that *Latimer* comes close to shifting the analysis in Arrants's favor. 991 F.2d 1509 (9th Cir. 1993). In *Latimer*, the Court considered whether a conviction should score when the defendant was ordered to serve three months in a community treatment center. *Id.* at 1512–14. It held that community confinement is not imprisonment, reasoning that "[t]he point of the criminal history calculation is to quantify the defendant's relative culpability, by measuring both the extent and seriousness of the defendant's prior criminal record." *Id.* Looking to other Guidelines provisions, the Court determined that community confinement, such as placement in a halfway house or community treatment center, is not a "sentence of imprisonment" because it signals relatively less "culpability" on the part of the defendant than does placement in a prison or jail. *Id.* at 1512.

*Latimer* is not immediately reconcilable with the decisions of the other circuits addressing when a sentence is one of imprisonment. The government

5

directs the Court's attention to three cases from other jurisdictions. In *United States v. Timbrook*, the Seventh Circuit determined that a sentence of probation conditioned on the defendant's participation in a work release program was a sentence of imprisonment. 290 F.3d 957, 959 (7th Cir. 2002). In *United States v. Brooks*, the Fifth Circuit similarly reasoned that a defendant sentenced to boot camp was sentenced to imprisonment because the defendant was not free to leave. 166 F.3d 723, 726–27 (5th Cir. 1999). And the Tenth Circuit has, along the same lines, ruled that commitment to a federally operated drug rehabilitation program was a sentence of imprisonment because the defendant "was deprived of liberty" subject to his release by the relevant authorities. *United States v. Vanderlaan*, 921 F.2d 257, 258–59 (10th Cir. 1990). There, the court wrote that "physical confinement is a key distinction between sentences of imprisonment and other types of sentences. The guidelines make no distinction between offenders incarcerated primarily for rehabilitation and those incarcerated simply to remove the offender from society." *Id.* at 259.

The Ninth Circuit considered *Vanderlaan*, the only of the three decisions to predate *Latimer*, and it determined that the case was distinguishable because the defendant in *Vanderlaan* was placed in a treatment program operated by the federal government, not a community treatment center. 991 F.2d at 1514–15. The Ninth Circuit accordingly determined that its decision was "not in tension with

6

the Tenth Circuit's reasoning" when both cases "stand[] for the proposition that the purposes for which an individual is confined are not dispositive of whether the confinement amounts to incarceration." *Id.* at 1515. The Court's reasoning on this point presents some conflict with its earlier explanation that placement in a community treatment center signals relatively less culpability than placement in a prison. *Id.* at 1512. Nonetheless, in consideration of the Court's clear statement that placement in a federal treatment center is "imprisonment," in this instance Arrants received a recommendation that he be imprisoned. Although privately owned, the Corrections Connections Program operates out of a secure facility that contracts with the DOC and which treats the incarcerated by design rather than happenstance; it is far closer to a treatment facility operated by the DOC or the federal Bureau of Prisons than to a community treatment facility.[1] Thus, *Latimer* does not control on this point.

*Latimer* is distinguishable on another ground, too. In *Latimer*, the government argued that the defendant had been sentenced to a term of imprisonment—"even if detention in a community treatment center is not incarceration, [the defendant] was nevertheless incarcerated during the relevant

---

[1] The Court notes that it has concerns about requiring PSR writers to conduct this kind of fact-intensive inquiry into treatment facilities, particularly in the absence of a clear standard for determining when a private facility is a "community treatment center." Here, though, the Court's knowledge of Corrections Connections is sufficient for the Court to perform the analysis suggested by *Latimer*.

7

time period because he was detained with a federal prison" while awaiting revocation and again pending transfer. 991 F.2d at 1517. The Court rejected the government's position because "the time [the defendant] spent in custody at the federal prison was entirely administrative in nature"; "the justification for [the defendant's] detention was not that he had violated his parole, but rather that he was *suspected* of violating his parole." *Id.* Here, on the other hand, Arrants was given time-served credit toward each five-year term of commitment to the DOC. As the Fifth Circuit has noted, "although [a defendant's] pretrial incarceration might have initially grown out of 'administrative necessity,' his later receiving 'credit' for time served linked the incarceration to an 'adjudication of guilt.'" *United States v. Fernandez*, 743 F.3d 453, 457 n.6 (5th Cir. 2014) (quoting *Latimer*, 991 F.2d at 1517); *accord United States v. Cruz-Alcala*, 337 F.3d 1194, 1200 (10th Cir. 2003) ("*Latimer* [is] distinguishable because Defendant's time in jail was not mere administrative 'pretrial confinement'; those 214 days were part of the punishment imposed by the state upon its finding that he was guilty . . . ."); *United States v. Staples*, 202 F.3d 992, 998 (7th Cir. 2000) (distinguishing *Latimer* on grounds that "being given credit for time served" is not the same as being "held without bail while awaiting trial.").

Although neither of Arrants's time-served sentences equaled one year and one month, this fact is not dispositive in light of the commentary to the Guidelines,

which provide both that: (1) "criminal history points are based on the sentence pronounced, not the length of time actually served"; and (2) "the length of a sentence of imprisonment is the stated maximum." U.S.S.G. § 4A1.2 cmt. n.2. Here, Arrants was sentenced to a maximum term of five years of imprisonment. His time in custody was credited toward that term, and the sentencing judges did not draw any qualitative distinction between the portion of the sentence already served in custody and the portion of the sentence remaining. Thus, both of the judgment forms authorized an indeterminate sentence of imprisonment, not to exceed five years. Arrants properly received three criminal history points as to each of the prior state court convictions.

Accordingly, IT IS ORDERED that, consistent with the judgment already entered in this case, the Defendant's objections to Paragraphs 37 and 38 of the PSR are OVERRULED.

DATED this 22nd day of April, 2019.

Dana L. Christensen, Chief District Judge
United States District Court